## THE CITY OF ALTON

### *v.*

### THOMAS MIDDLETON'S HEIRS *et al.*

*Filed at Mt. Vernon October 16, 1895.*

1. PUBLIC IMPROVEMENTS—*valid ordinance is the foundation of a special assessment.* A legal and sufficient ordinance is the foundation of a valid special assessment.

2. SAME—*ordinance must describe the improvement.* Failure of an ordinance to specify or describe the nature, character and locality of the improvement, either within its own four corners or by reference to maps, plats, plans, profiles or specifications on file in the office designated by statute, deprives the court of authority to confirm the assessment.

3. SAME—*reference in ordinance to plans in engineer's office not sufficient.* Reference in such an ordinance to plans and specifications on file in the office of the *city engineer* is not a reference to such plans, etc., in the office of "the proper clerk," within the meaning of the laws of 1887, (p. 108,) providing for such a reference to aid the description.

4. SAME—*instance of insufficient description of sewer in ordinance.* A description of a proposed sewer does not sufficiently show its depth or the vertical plane of the improvement by stating that it is to commence at a connection with a specified large street sewer, which measures nine or ten feet vertically from top to bottom, and extend to another specified sewer, without even showing in which direction the drainage is to be.

5. SAME—*ordinance must furnish necessary data for bidders.* Data necessary for estimating the cost of a public sewer should be furnished by an ordinance providing for it, either upon its face or by reference, as provided by statute, so as to enable bidders to make intelligent bids for the work, and thereby invite a healthy competition among contractors.

APPEAL from the County Court of Madison county; the Hon. WILLIAM H. KROME, Judge, presiding.

JOHN F. MCGINNIS, and LEVI DAVIS, for appellant:

The ordinance itself sufficiently specifies the nature, character, locality and description of the improvement, without reference to plans or specifications. *Levy* v. *Chicago*, 113 Ill. 650; *Railway Co.* v. *Jacksonville*, 114 id. 562; *Lake* v. *Decatur*, 91 id. 599; *People* v. *Sherman*, 83 id. 165; *Kan-*

*kakee* v. *Potter*, 119 id. 324; *Springfield* v. *Mathus*, 124 id. 88; *Pearce* v. *Hyde Park*, 126 id. 287; *County of Adams* v. *Quincy*, 130 id. 566.

The ordinance being within the power conferred, has the force and effect of a law passed by the legislature. *Mason* v. *Shawneetown*, 77 Ill. 533.

This court has sustained many an ordinance in this class of cases whose provisions were even less particular than those above quoted. *Kankakee* v. *Potter*, 119 Ill. 324; *People* v. *Sherman*, 83 id. 165; *Railway Co.* v. *Jacksonville*, 114 id. 562; *Levy* v. *Chicago*, 113 id. 650; *Lake* v. *Decatur*, 91 id. 596; *Springfield* v. *Mathus*, 124 id. 88; *Pearce* v. *Hyde Park*, 126 id. 287; *County of Adams* v. *Quincy*, 130 id. 566.

ALEX. W. HOPE, for appellees:

The ordinance does not specify the nature, character, locality and description of the improvement, as required by law.   1 Starr & Curtis, chap. 24, p. 135.

If the legislature had °meant the city engineer, the law would have said "city engineer," not "proper clerk." *Sterling* v. *Galt*, 117 Ill. 11; *Hyde Park* v. *Spencer*, 118 id. 458; *Railroad Co.* v. *East St. Louis*, 134 id. 661.

Mr. JUSTICE BAKER delivered the opinion of the court:

This is a proceeding commenced by the city of Alton for the construction of a pipe-sewer in a portion of Second street, in said city, by special assessment.   The appellees herein, who are objecting property owners, filed in the county court various objections to the confirmation of the assessment roll, and some of these objections were sustained by the court, and the petition for judgment of confirmation was dismissed as to the property of appellees.   From the order and judgment of the court in that behalf made and rendered, this appeal is prosecuted by the city.

Among the objections made to the assessment are the following:   First, "the ordinance does not specify the

nature, character, locality and description of the improvement, as required by the statute, and for that reason is illegal and contrary to law;" and second, "the ordinance does not designate a certain point of beginning or ending, nor a certain course for said sewer on said Second street from beginning to end, and for that reason is illegal and void."

Sections 1 and 2 of the ordinance providing for said improvement are substantially as follows:

"Sec. 1. That the following local improvement be and the same is hereby ordered to be made in the manner hereinafter specified, to-wit: That there be constructed in Second street, from the connection with the Piasa street sewer, in Piasa street, to a connection with the Ridge street sewer, in Ridge street, an underground pipe-sewer, commencing at a connection with the Piasa street sewer, on Piasa street, running thence east in the center line of Second street (or as near the center as practical, taking into consideration where the water mains are now laid, so as not to interfere in any way with them,) to a connection with the sewer on Alton street; thence east in the said center line of Second street, or as near the center as practical, to a connection with the Ridge street sewer. Said main sewer, laid in the center of said Second street, shall be of the best stone-glazed pipe, (and known as vitrified-stone pipe,) the size of which shall be eighteen inches (18 in.) in diameter. All joints shall be uniform, and cemented, and filled with the best Louisville cement mortar. All connections with cross-sewers now laid shall be carefully cemented. There shall be inlets to said sewer at the following places, to-wit," etc.

"Sec. 2. That said sewer and inlets shall be laid at a proper depth and grade to give proper fall and drainage; and in addition to the foregoing all of said improvement shall be done under the supervision of the city engineer and the committee on sewers of the city of Alton, in accordance with the plans, maps, profiles and specifica-

tions to be furnished by the city engineer, and now on file in his office."

Section 19 of article 9 of the City and Village act, as amended June 17, 1887, (Laws of 1887, pp. 107, 108,) provides: "Whenever such local improvements are to be made wholly or in part by special assessment, the said council in cities or board of trustees in villages shall pass an ordinance to that effect, specifying therein the nature, character, locality and description of such improvement, either by setting forth the same in the ordinance itself, or by reference to maps, plats, plans, profiles or specifications thereof on file in the office of the proper clerk, or both."

The first question that arises is, whether or not an ordinance which describes the proposed improvement by a reference to plans, maps, profiles and specifications on file in the office of the city engineer, is in compliance with the requirement of the statute that permits the description to be made by reference to maps, plats, plans, profiles or specifications on file in the office of "the proper clerk."

It has been said that a substantial compliance with the statute is all that is required in an ordinance of this kind. (*City of Kankakee* v. *Potter*, 119 Ill. 324.) But a legal and sufficient ordinance is the foundation of a valid special assessment, and hence, if the ordinance does not contain a specification or description of the nature, character and locality of the improvement, either within its own four corners or by reference to maps, plats, plans, profiles or specifications on file in the office designated by the statute, the court will have no authority to confirm the assessment. (*Levy* v. *City of Chicago*, 113 Ill. 650; *Ogden* v. *Town of Lake View*, 121 id. 422). In *City of Kankakee* v. *Potter, supra*, this court said (p. 327): "As the ordinance affords the only authority for what is proposed to be done by the municipality, there necessarily can be no authoritative way of making that known except through the

ordinance, *as required by the statute.* It is the basis of all contracts for the construction of the improvement," etc. And in *Lake Shore and Michigan Southern Railroad Co.* v. *City of Chicago,* 56 Ill. 454, in speaking of an ordinance providing for a public improvement by special assessment, it was said (p. 456): "If the exercise of this great power over the rights of private property can be upheld at all, it can only be done by showing a close, straightforward, honest compliance with every substantial requirement of the law prescribed for its government."

Prior to the amendment of 1887, permitting the nature, character, locality and description of the improvement to be set forth in the ordinance by reference to the maps, plats, plans, profiles or specifications thereof on file in the office of the proper clerk, the original section 19 required the improvement to be described in the ordinance itself, and a case then arose where the ordinance, instead of itself describing the nature, character and locality of the improvement, referred for the details thereof to the maps, plans, profiles and specifications of the same made by a "civil engineer, and now on file in the office of the city clerk of said city," and this court held that the provision of the statute as it then stood was mandatory; that the fact of a reference to the specifications as being in the city clerk's office could not alter the case; that that was not a source of information which the law recognized in these matters; that the statute, whether for wise or unwise purposes, had required this information to be inserted in the ordinance itself; that that had not been done or attempted to be done, and that therefore the ordinance was fatally defective. (*City of Sterling* v. *Galt,* 117 Ill. 11.) And so, by parity of reasoning, the provision in section 19, as amended in 1887, requiring the specifications of the improvement, if not given in the ordinance itself, to be set forth by reference to maps, plats, plans, profiles or specifications on file "in the office of the proper clerk," must be regarded as mandatory.

If the legislature had intended that a reference to plans, etc., on file in the office of the city engineer should be a sufficient specification of the nature, character, locality and description of the improvement, then the statute would have mentioned such official, instead of designating the clerk, only. The statute does not recognize plans, etc., on file in the office of the city engineer as a source of information in these matters, but, whether for wise or unwise purposes, requires such information to be obtained either from the ordinance itself, or from maps, plats, plans, profiles or specifications on file in the office of "the proper clerk." In *Pearce* v. *Village of Hyde Park*, 126 Ill. 287, and *Steele* v. *Village of River Forest*, 141 id. 302, where the amendment of 1887 came under consideration, the references in the ordinances were to the plans, profiles and specifications on file in the office of the clerk of the village, and not to those on file in the office of the engineer.

Counsel for appellant concede that "if, in section 19, the word 'proper' had not been used in connection with 'clerk,' it would have been understood that the city or village clerk was meant;" but they claim that the use of the word "proper" gives to the word "clerk" a wider meaning than "city or village clerk," and that the city engineer must be regarded as a "proper" clerk, because the making of the plans, etc., is his appropriate work, and therefore his office is the appropriate place for filing them. We cannot agree with this construction. It gives to the common council the power to designate the appropriate place for the filing of the plans, etc., regardless of the requirements of the statute upon the subject. Said amended section 19 starts out by providing that "whenever such local improvements are to be made wholly or in part by special assessment, the said council in cities or board of trustees in villages shall pass an ordinance to that effect, specifying therein the nature, etc., of such improvement," etc. The subsequent word "proper," which

qualifies the word "clerk," refers back to the words "council in cities or board of trustees in villages," and was intended to designate the clerk proper for or appropriate to the character of the municipality passing the ordinance. If the ordinance is passed by a city, the proper clerk is the city clerk; and if the ordinance is passed by a village, the proper clerk is the village clerk. It is appropriate, and operates as a reasonable safeguard against mistakes and frauds, that the plans, etc., should be filed in the office of the clerk of the city or village. The nature, character, locality and description of the improvement must be specified in the ordinance, even though it is done by reference made therein to the plans, specifications, etc.; and therefore the plans, specifications, etc., being made, by reference, virtually a part of the ordinance, are very properly placed on file in the office where the ordinance is required to be kept. Section 18 of article 3 of the City and Village act provides that "all ordinances passed by the city council shall, before they take effect, be deposited in the office of the city clerk;" section 4 of article 5 provides that "all ordinances, and the date of publication thereof, may be proven by the certificate of the clerk, under the seal of the corporation;" and sections 10 and 11 of article 6 direct that "the clerk shall keep the corporate seal   *   *   *   and all papers belonging to the city or village,   *   *   *   (and) shall record, in a book to be kept for that purpose, all ordinances passed by the city council or board of trustees," etc.

From the statute, and for the reasons herein stated, we think that an ordinance for a local improvement, to be made wholly or in part by special assessment, cannot, by reference to maps, plats, plans, profiles or specifications on file in the office of the city engineer, set forth or show the nature, character, locality or description of such improvement, and it follows that, in deciding this case, the specifications, plans and profiles which were on

file in the office of the city engineer of the city of Alton must be excluded from consideration.

It is urged that, without reference to the plans and specifications, the ordinance in itself sufficiently specifies the nature, character, locality and description of the improvement. Section 1 of said ordinance provides: "That there shall be constructed in Second street, from the connection with the Piasa street sewer, in Piasa street, to a connection with the Ridge street sewer, in Ridge street, an underground pipe-sewer, commencing at a connection with the Piasa street sewer, on Piasa street, running thence east in the center line of Second street * * * to a connection with the sewer on Alton street, thence east in the said center line of Second street * * * to a connection with the Ridge street sewer. Said main sewer laid in the center of said Second street shall be of * * * pipe, * * * the size of which shall be eighteen inches in diameter." And section 2 provides that "said sewer * * * shall be laid at a proper depth and grade to give proper fall and drainage."

The location of the proposed sewer on the horizontal plane of the city of Alton is sufficiently indicated by the references to the center of Second street, Piasa street, Alton street and Ridge street, found in section 1, but we are unable to find in that or in the subsequent section, or elsewhere in the ordinance, any data from which to determine the location of said sewer on the vertical plane of the city. If the claim be conceded that the Piasa street sewer, the place of beginning, and the Ridge street sewer, the place of ending, are well known monuments and that the depths of said two sewers are readily ascertainable by making the proper measurements, yet this does not seem to help the matter of the location of the Second street sewer on the vertical plane. The proposed new sewer is to be "an underground pipe-sewer, commencing at a connection with the Piasa street sewer," but no information is anywhere given as to whether this connec-

tion is to be with the side, the top or the bottom of the Piasa street sewer, nor is it anywhere designated how deep under ground the new pipe-sewer is to be laid. It appears from the evidence in the record that the so-called Piasa street sewer is an underground stone culvert or arched drain that was originally constructed for the passage of a natural stream of water, and that it is used as a drain and sewer for the accumulated waters of quite an extensive valley. Its dimensions do not definitely appear in the record, but the evidence indicates that it is at least nine or ten feet high, from top to bottom. We are not aware that there is anything, in the nature of things, that would prevent an underground pipe-drain from being connected with this Piasa street culvert either at its bottom, or within a foot of its top, or at any intermediate distance between top and bottom, and so it necessarily follows that the starting point of the Second street sewer on the vertical plane of the city is not located by the ordinance; and it not being indicated, and it being nowhere stated in the ordinance how deep below the surface of Second street the new pipe-sewer is to be placed, either at Piasa street or at Ridge street, or at any other point along the line of the improvement, it follows that it is wholly uncertain, and incapable of ascertainment, whether one foot of excavation or ten feet of excavation, or some other depth of excavation, is required to be made in constructing the contemplated underground pipe-sewer. There is nothing in the ordinance to fix the vertical plane of the improvement at the connection with the Ridge street sewer. It is true that section 2 of the ordinance provides "that said sewer shall be laid at a proper depth and grade to give proper fall and drainage;" but what is "a proper depth," or "proper grade," or "proper fall and drainage," are matters about which different engineers and different contractors might well have differing opinions. As we understand the record, the proposed sewer is to extend from the Piasa street

sewer to the Ridge street sewer,—a distance of nine blocks; but whether the grade is to be such as to conduct all the waters for that whole distance to the Piasa street sewer, or all to the Ridge street sewer, or some portion or for given distances to each, does not appear. In other words, not only is no grade fixed by the ordinance for all or any portion of the sewer, but it is not even indicated therein in which direction, east or west, the drainage is to be.

One object of the requirement of the statute that the ordinance shall specify the nature, character, locality and description of the improvement is, that those charged with the duty of making an estimate of the cost of such improvement may make an intelligent, just and fair estimate thereof; and another object is, that since such ordinance is the basis for all contracts for the construction of the improvement, it should contain, either upon its face or by reference to specifications, etc., on file in the office designated by the statute, the data necessary for estimating its cost, so as to enable bidders to make intelligent bids for the work, and thereby invite a healthy competition among contractors. *Levy* v. *City of Chicago*, 113 Ill. 650; *City of Sterling* v. *Galt*, 117 id. 11; *City of Kankakee* v. *Potter*, 119 id. 324; *City of Springfield* v. *Mathus*, 124 id. 88 ; *Barber* v. *City of Chicago*, 152 id. 37; *Steele* v. *Village of River Forest*, 141 id. 302.

It seems to be supposed by appellant that the case last cited (*Steele* v. *Village of River Forest*) is an authority in point to sustain the sufficiency of the ordinance here in question. The ordinance there involved was quite different from the one now before us. It provided that the drain should be constructed in the center of Thatcher avenue, "from the man-hole now constructed on the line of the Madison street pipe-drain," and that "the bottom of said drain, at its junction with the pipe-drain on Madison street, shall be laid eight and six-tenths feet above the village datum, and the grade of such drain shall fall uni-

formly from that point two-tenths of one foot in every hundred feet of its length." The point there decided was, that where, from the entire ordinance, the starting point of a drain can be fixed and its depth at that place ascertained, the ordinance will not be void for uncertainty. And we there used this language—which seems quite appropriate here:. "It is contended that the ordinance is defective because there is no starting point for the sewer, and hence nothing to show how deep or shallow it shall be. There is much force in the position of counsel on this point. It is plain if the starting point of the drain is not given its depth could not be determined, and no intelligent bid could be made for the work."

To get back to our case. It needs no expert testimony to show that with simply this ordinance for the construction of a sewer in Second street before them, neither the committee of three aldermen appointed to make an estimate of the cost of that sewer, nor persons desirous of bidding for the performance of the work, could make an intelligent estimate of such cost. The ordinance leaves it a mere matter for surmise and conjecture whether the excavation required for laying the pipe-sewer is of the depth of one foot or ten feet or fifteen feet from the surface of the street at each and all of the different points along the entire line of the proposed improvement. And the expert testimony corroborates the conclusion plainly deducible by any one from the ordinance itself. Thomas Long, who has been a civil engineer for twenty-five years, testifies that nobody could make an intelligent bid, and tell what the depth of the sewer was at the point of beginning or ending, or at any place along its line. E. E. Rutledge, a civil engineer, introduced as a witness by appellant, testifies that the depth would have to be gotten outside of the ordinance, in some way, in order to enable one to make an intelligent estimate of how much work it would take to put in the pipe. R. D. Nixon, who is a plumber, and is also

engaged in the business of building sewers, testifies that from the ordinance, profiles and specifications he could not have made an intelligent bid on the work. And A. F. Foster, the contractor who did the work under a contract with the city, testifies that he could not tell from the ordinance how much he had to dig, and that he could not make a proper bid on that ordinance alone, without the depth being given to him.

For the reasons stated herein, we are unable to arrive at the conclusion that the county court committed error when it rendered the judgment and entered the order from which this appeal is taken.

There is no occasion for considering the other objections made to the rendition of judgment of confirmation.

The judgment and order below are affirmed.

*Judgment affirmed.*