ALFRED B. McCHESNEY *et al.*

*v.*

THE CITY OF CHICAGO.

205     611
208     ¹390

*Opinion filed December 16, 1903.*

1. SPECIAL ASSESSMENTS—*when improvement scheme may be changed without new hearing.* Under section 8 of the Improvement act, as amended in 1901, authorizing the improvement board, at the public hearing, to change the scheme proposed without another public hearing if the cost is not increased more than twenty per cent, no new hearing is required where the change made decreases the cost.

2. SAME—*variance must be substantial or willful to overcome prima facie case.* Under section 9 of the Local Improvement act, providing that the recommendation of the improvement board shall be *prima facie* evidence that all the preliminary requirements of the law have been complied with, departures from the statute, even if proven on the trial, must be substantial or willful.

3. SAME—*what does not overcome force of improvement board's recommendation.* The force of the improvement board's recommendation, as *prima facie* evidence of compliance with preliminary legal requirements, is not overcome by the introduction of the record of a resolution of the board staying the proceedings for one year under a remonstrance of property holders, and of an order rescinding the stay resolution upon the ground that certain signatures to the remonstrance were fraudulent.

4. SAME—*city not required, in first instance, to prove exact compliance with statute.* Under section 9 of the Local Improvement act, making the improvement board's recommendation *prima facie* evidence of compliance with the preliminary requirements of the law, the city is not required to prove, in the first instance, that the proceedings of the board were in exact compliance with the statute.

5. SAME—*ordinance not required to specify amount of back filling.* An ordinance for curbing and paving, which requires earth filling to be placed back of the curb-stones even with their tops for a certain width and at a certain slope, need not specify the amount of the filling in cubic yards.

APPEAL from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

F. W. BECKER, for appellants.

WILLIAM M. PINDELL, (CHARLES M. WALKER, and EDGAR BRONSON TOLMAN, of counsel,) for appellee.

Mr. Justice Wilkin delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook county overruling the objections of appellants and confirming a special assessment levied to pay for curbing, grading and paving Seventy-fourth street, in the city of Chicago.

On June 26, 1901, the board of local improvements passed a resolution originating the scheme for curbing the street with sandstone curbing, grading the street and paving it with blast-furnace slag, crushed limestone and crushed granite. At the public hearing on July 18, 1901, the board passed a resolution abandoning the improvement mentioned in the former resolution and directing the engineer to prepare an estimate of the cost of an improvement of the street with asphalt and a combined curb and gutter. Estimates having been presented by the engineer showing the cost would be $21,000, the board on February 5, 1902, passed a resolution providing for the latter improvement and fixed the time and place for the public hearing. On the day fixed, March 6, 1902, after proper notice, the public hearing was had, and objections being presented, the board amended its resolution and substituted for the combined curb and gutter sandstone curbing, and for asphalt, slag and crushed limestone and granite, and directed the engineer to prepare an estimate of the cost of the improvement as amended, and that the improvement be proceeded with in accordance with the resolution of February 5, 1902, "as hereby amended and modified." The estimated cost of the improvement as last provided for was $12,500. Thereafter, on April 7, 1902, on receiving what appeared to be a protest or remonstrance by a majority of the property holders, the board passed a resolution to the effect that the improvement be stayed one year. Afterward, on the 26th of June, 1902, the board passed a resolution reciting that it appearing to the board that a number of the signatures upon the petition and the affidavit are fraudulent, (meaning the

protest,) the former order staying the proceedings was thereby rescinded and the secretary was instructed to prepare the ordinance and submit it to the council, together with the recommendation of the board, for its passage. The ordinance was passed by the council, and the following November the petition for the assessment was filed with the county court.

The first objection urged by the appellants is, that the board did not take the necessary preliminary steps, —that is, that no public hearing was had as to the improvement provided for by the board at its meeting on March 6, 1902, and embraced in the ordinance submitted to and passed by the council. The contention is, that the board abandoned not only the first proposed improvement, but also the second one,—that is, the asphalt pavement and the combined curb and gutter,—and that section 8 of the Local Improvement act (Hurd's Stat. 1901, p. 378,) permitted the submission of an ordinance without a further public hearing only where, at the public hearing, "the said proposed improvement be not abandoned." We do not understand that the grading, paving and curbing the street was abandoned at the public hearing on March 6, but only that different materials and a less expensive mode of making the improvement were substituted. Said section 8, as amended in 1901, authorizes the board, at a public hearing, to adopt a new resolution changing the scheme proposed without another public hearing, when the change does not increase the cost more than twenty per cent. (*Washburn* v. *City of Chicago*, 198 Ill. 506.) In the case at bar the cost was greatly decreased. We are of the opinion that no further hearing was necessary.

It is again insisted that the rescission by the board, at its meeting on June 26, 1902, of its former order staying the proceedings for one year, was without authority of law, and void. Section 8, as amended in 1901, provides that in cities of 100,000 inhabitants or more, "when

a remonstrance petition is filed by the owners of a majority of the frontage on the line of the proposed improvement with the board of local improvements within thirty days after the public hearing thereon, said board shall thereupon stay all proceedings therein for one year from said date." The said section also provides that the remonstrance "shall contain the signatures of the owners or legal representatives, the description of the property owned or represented, the number of feet so owned or represented, and shall be verified by affidavit of one or more property owners fronting on the line of the proposed improvement, setting forth that the party making the affidavit is a property owner, fronting on the proposed improvement, and that the parties who signed the same are the owners or legal representatives of the property described therein." The contention is, first, that the board had exhausted its power when it acted on the remonstrance, whether such remonstrance was fraudulent or not, and stayed the proceedings for one year; and secondly, that if it had power to set aside such stay order it could not do so without notice to the property owners, and authorities are cited which are thought to support this view. Undoubtedly, in all such statutory proceedings whereby the owner is deprived of his property without his consent the statute must be strictly complied with, and we have often so held. But the whole statute, so far as applicable, must be considered. The proceedings before the board can have no force without the passage of the ordinance by the city council, and section 9 of the same statute provides as follows: "With any such ordinance, presented by such board to the city council or board of trustees, shall be presented also a recommendation of such improvement by the said board, signed by at least a majority of the members thereof. The recommendation by said board, shall be *prima facie* evidence that all the preliminary requirements of the law have been complied with, and if a variance be shown on

the proceedings in the court, it shall not affect the validity of the proceedings, unless the court shall deem the same willful or substantial."

It is not denied that the General Assembly had the power to make such recommendation accompanying the draft of the ordinance to the council *prima facie* evidence that the board had complied with all the preliminary requirements of the law. Even if variances in proceedings by the board are shown on the trial in court, they will not, as the statute expressly provides, affect its validity unless they are deemed by the court to have been willful or substantial. On the trial in the county court the appellants offered no evidence except the record of the several orders and resolutions adopted by the board, already mentioned. We are of the opinion that such evidence was not sufficient to overcome the *prima facie* case made by the petitioner. It does not appear that the remonstrance was given in evidence or any proof whatever made that it complied with the statute. It appeared that proper notice was given of the hearing, but whether notice was given of the proceedings to set aside the order staying the work for one year does not appear. Appellants might have shown, if it had been the fact, that a remonstrance within the provisions of the statute was filed with the board, and that the subsequent action by the board and city council within the year was unauthorized. Not having done so, the *prima facie* case made by the petition was not overcome. If no such remonstrance was filed, or if it was found to be fraudulent, as the board afterwards ascertained, it was not its duty to postpone the proceedings for a year. At all events, it was open to appellants in the county court to prove, if they could, that there was a substantial or willful departure by the board from the course of proceeding prescribed by the statute. To require the petitioner to prove, in the first instance, that the proceedings of the board were in exact compliance with the statute before

the assessment could be confirmed would entirely abrogate said section 9. Departure from the statute, to affect the validity of the proceedings, must be substantial or willful.

The next alleged error insisted upon is, that the ordinance, in requiring earth filling to be placed back of the curb-stones and even with the top of them, four feet wide at the top, with a slope down the outside of one and one-half feet horizontal to one foot vertical, fails to state the depth of such filling so that its quantity could be determined, and *Willis* v. *City of Chicago*, 189 Ill. 103, is cited in support of the contention that the ordinance is insufficient in the respect mentioned. We do not understand that it was necessary to state in the ordinance the number of cubic yards of filling to be put in. If the filling was to be even with the top of the curb and four feet wide, with the slope as stated, it would be clear to every one that the amount of filling would depend on the configuration of the ground after the grading was done and the curb-stone put in, and that the depth of the filling would depend on the varying surface of the ground. We think all the necessary requirements were stated from which the contractor could determine the amount of work to be done, as well as any other person interested. The same objection might with as much, and even more, reason, have been made to the provision for grading the street. The ordinance does not state, nor was it necessary that it should state, how much dirt was to be removed nor to what depth along the street, but only what the surface of the street, when graded, should be. The grading would include, in many cases, dirt to be removed from one place and deposited in another, and it would not be necessary to state in the ordinance anything more than the grade and the conformation, when completed, of the surface of the street. We see no reason why any stricter rule should be applied to the filling back of the curbing. In *Willis* v. *City of Chicago, supra,* the question was

as to the depth to which the curbing should be placed. That question could not be determined from the ordinance. Its height was given, but, without anything from which its depth could be ascertained, its size and cost could not be determined so as to enable contractors to make an intelligent bid. As said in that case, "the top is the grade of the street, but the bottom may be one foot or two feet below the grade, for anything shown in the ordinance." That is a very different thing from "filling," which everyone would know would have to begin at the bottom of the depression to be filled. Counsel also cites *City of Alton* v. *Middleton's Heirs*, 158 Ill. 442, but, like the *Willis case*, it has no application. The ordinance there failed to state at what depth below the surface the sewer was to be placed, hence it was impossible to ascertain what excavation would be necessary.

The objection that the ordinance requires a layer of limestone screenings to be placed on the crushed limestone, and a layer of bank gravel to be placed on the crushed granite, without stating the thickness of these layers of screenings and bank gravel, is not sustained by the record. The abstract does not fairly state the provisions of the ordinance in that regard. The ordinance does provide that the layer of limestone screenings shall be spread "so as to completely fill all the interstices in the layer of limestone,"—that is, in the three inches of crushed limestone provided for,—and the same requirement was made as to the layer of granite screenings placed on the three inches of bank gravel.

Some other minor objections are made, which we have examined but find without substantial merit, and they need not be further noticed.

No reversible error appearing, the judgment of the county court will be affirmed.

*Judgment affirmed.*